UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF
MASSACHUSETTS,

Plaintiff,

v.

UNITED SALVAGE CORP. OF
AMERICA,

Defendant.

Case No. 1:23-cv-12810

**CONSENT DECREE**

WHEREAS, United Salvage Corp. of America, doing business as Framingham Salvage Company ("Framingham Salvage"), operates a scrap metal recycling facility at 120 Waverly Street, Framingham, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Framingham Salvage has discharged industrial stormwater from the Facility through the City of Framingham's municipal separate storm sewer system into Beaver Dam Brook, the largest tributary of Lake Cochituate, without complying with its federal Multi-Sector General Permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. §§ 1331(a) *et seq.* (the "Clean Water Act" or "the Act");

WHEREAS, by letter dated October 26, 2022, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit

1

against Framingham Salvage ("Notice") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to Framingham Salvage, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

WHEREAS, today the Attorney General filed a complaint against Framingham Salvage in the United States District Court, District of Massachusetts (the "Complaint");

WHEREAS, Framingham Salvage does not admit any liability arising out of the facts or laws referenced or alleged in the Notice or Complaint;

WHEREAS, the Commonwealth and Framingham Salvage (collectively, the "Parties") have reached an agreement to fully resolve this dispute;

WHEREAS, Framingham Salvage asserts that there are no discharges of stormwater that originate at the facility Framingham Salvage operates at 327 West Central Street in Natick, Massachusetts ("Natick Annex"); and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the

District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2.     The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

### III. EFFECTIVE DATE

3.     The effective date of this Consent Decree shall be when the Court enters the Consent Decree on the docket ("Effective Date").

### IV. PARTIES BOUND

4.     This Consent Decree shall constitute a binding agreement between the Parties, and Framingham Salvage consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Framingham Salvage agree otherwise in writing within fourteen (14) days of the Court's decision.

5.     The provisions of this Consent Decree shall apply to and bind Framingham Salvage and any person or entity acting by, for, or through Framingham Salvage, including Framingham Salvage's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with Framingham Salvage who receive notice of this Consent Decree.

6.      Framingham Salvage shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Framingham Salvage shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract, entered into after the Effective Date of the Consent Decree, on the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, Framingham Salvage shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

7.      For two (2) years following the Effective Date, Framingham Salvage shall provide written notice of any prospective change or transfer in ownership of its business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within two (2) years following the Effective Date, Framingham Salvage shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendant or its managers, officers, directors, agents, successors, assigns, heirs, and/or servants of any obligation under this Consent Decree, unless:

        a.      the transferee agrees, in writing, to undertake any outstanding obligations required by Section V (Payments), Section VI (Injunctive Relief), and Section VII (Facility Access and Submission of Records) and to be added as

a Defendant or substituted for the Defendant as a Party under the Consent Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

b.   the Commonwealth agrees to consent, in writing, to relieve the Defendant of its obligations under the Consent Decree; and

c.   the transferee becomes a party under this Consent Decree pursuant to Section XV (Modification).

Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

8.   Framingham Salvage shall not violate this Consent Decree, and Framingham Salvage shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Framingham Salvage shall not raise as a defense the failure by any of Framingham Salvage's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.   In addition to any relief specifically provided in this Consent Decree, Framingham Salvage understands and agrees that violations of this Consent Decree may be punishable by contempt pursuant to an appropriate civil contempt proceeding.

## V. PAYMENTS

10.   Within fifteen (15) days of the Effective Date, Framingham Salvage shall pay to Communities Responding to Extreme Weather ("CREW") the sum of sixty thousand dollars ($60,000) for projects to benefit water quality in the Beaver Dam Brook watershed. CREW is incubated by the organization Better Future Project. Evidence of Framingham Salvage's payment

to Better Future Project to fund CREW projects shall be contemporaneously provided by Framingham Salvage to the Commonwealth pursuant to Section XIII (Notices). Payments should be made by wire transfer referencing this action to the following account:

Better Future Project



Reference: c/o CREW, Commonwealth v. Framingham Salvage – Payment

11.     Within fifteen (15) days of the Effective Date, Framingham Salvage shall reimburse the Attorney General's Office in the amount of twenty-five thousand dollars ($25,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General



Reference: EPD, Commonwealth v. Framingham Salvage – Costs

### VI. INJUCTIVE RELIEF

12.     Framingham Salvage agrees to operate the Facility in compliance with the applicable requirements of the currently applicable Stormwater Permit, including any amendments thereto or reissuances thereof, and with the Federal Clean Water Act. Specifically, Framingham Salvage shall:

a.  control stormwater at the Facility to "minimize" pollutants, that is, "to reduce and/or eliminate to the extent achievable using stormwater control measures (SCMs) (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice," pursuant to Stormwater Permit Section 2.0;

b.  comply with all corrective actions and additional implementation measures, including all documentation requirements, pursuant to Stormwater Permit Section 6.0;

c.  within twelve (12) months of the Effective Date, Framingham Salvage will design and construct a trench drain system for purposes of collecting and treating stormwater runoff that flows down the southeast driveway toward Morton Street. The goal of the system is to capture stormwater flow from the driveway before it can enter the catch basin below it on Morton Street The system is planned to include a new trench drain which will flow into a new infiltration structure to be located west of the trench drain and along the southern property boundary. A new berm will be constructed on the southern end of the driveway just downstream of the new trench drain to provide further redirection of driveway runoff away from Morton Street. Framingham Salvage expects that the system and berm together will eliminate stormwater flow to the Morton Street catch basin;

d.  within two (2) months of the Effective Date, Framingham Salvage shall update its site map and Stormwater Pollution Prevention Plan ("SWPPP") to

the extent necessary to show accurate flow directions across the Facility; and

e.    by the Effective Date, Framingham Salvage shall ensure that no scrap metal is stored at the Natick Annex.

## VII. FACILITY ACCESS AND SUBMISSION OF RECORDS

13.    Framingham Salvage shall permit the Attorney General's Office to visit the Facility during normal daylight business hours for two (2) years following the Effective Date, provided that the Attorney General's Office provide at least seventy-two (72) hours of prior notice. During any Facility visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be maintained pursuant to the Stormwater Permit and may collect stormwater samples and take photos at the Facility. Copies of any photos taken by or for the Attorney General's Office shall be provided to Framingham Salvage within ten (10) days of any Facility visit.

14.    For a period of two (2) years following the Effective Date, Framingham Salvage shall provide the Attorney General's Office with the following documents in accordance with Section XIII (Notices), below:

a.    copies of all documents Framingham Salvage submits to EPA, the Commonwealth, and/or the City of Framingham concerning Framingham Salvage's stormwater controls or the quality of Framingham Salvage's Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the

Attorney General's Office within ten (10) business days of Framingham Salvage's receipt of a written request by the Attorney General's Office;

b.  copies of all documents and communications Framingham Salvage submits to EPA concerning Corrective Action or Additional Implementation Measures taken at the Facility will be provided within ten (10) business days of submitting them to EPA;

c.  all maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of Framingham Salvage's receipt of a written request by the Attorney General's Office;

d.  all written material, including Power Point presentations, associated with any trainings referenced in the Company's SWPPP. Training materials will be provided within ten (10) business days of Framingham Salvage's receipt of a written request by the Attorney General's Office;

e.  written notice of any changes made to any of Framingham Salvage stormwater control measures that are described in the SWPPP pursuant to Stormwater Permit Section 6.2.4, within ten (10) business days of Framingham Salvage's receipt of a written request by the Attorney General's Office;

f.  written notice of any changes made to Framingham Salvage's stormwater control measures pursuant to Stormwater Permit Section 6.3, within ten (10) business days of Framingham Salvage's receipt of a written request by the Attorney General's Office;

g.      current copies of Framingham Salvage's SWPPP within ten (10) business days of receipt of a written request by the Attorney General's Office; and

h.      Discharge Monitoring Reports and supporting laboratory reports and analytical results of stormwater sampling performed by or for Framingham Salvage within ten (10) business days of submitting the Discharge Monitoring Reports to EPA.

15.     Any information provided by Framingham Salvage may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

16.     The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Framingham Salvage to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII.  INTERESTS AND COLLECTIONS

17.     If any payment required pursuant to this Consent Decree is late or not made, Framingham Salvage shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all reasonable expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

18.    Upon compliance by Framingham Salvage with the requirements of this Consent Decree, (a) this Consent Decree shall fully resolve Framingham Salvage's liability for the specific legal claims alleged against it in the Notice and Complaint, and (b) the Commonwealth shall fully release Framingham Salvage from liability for the specific legal claims alleged against it in the Notice and Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

19.    Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Framingham Salvage, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

20.    This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Framingham Salvage is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Framingham Salvage's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Framingham Salvage's compliance with any

11

aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

21.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

## XII. MISCELLANEOUS

22.     Framingham Salvage understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Framingham Salvage may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

23.     Framingham Salvage shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree. consistent with the scope of 33 U.S.C. § 1365(d).

24.     Nothing in this Consent Decree shall prevent Framingham Salvage from taking any action otherwise required by law.

25.     The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

26.     In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

27.     Framingham Salvage is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

28.     Signature of the parties transmitted by scanning and email are binding.

## XIII. NOTICES

29.     Unless otherwise specified in this Consent Decree, notices and submissions

required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Emily Mitchell Field, Attorney
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Emily.Field@mass.gov

Muhammad Diallo, Federal Enforcement Case Coordinator
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Muhammad.Diallo@mass.gov

For Framingham Salvage:

David P. Rosenblatt, Esq.
Burns & Levinson LLP
125 High Street
Boston, MA 02110
drosenblatt@burnslev.com

or, to such other place or to the attention of such other individual as a party may from time to

time designate by written notice to the other parties to this Consent Decree.

## XIV. INTEGRATION

30.     Except as expressly set forth in this Consent Decree, this Consent Decree sets

forth all of the obligations of the parties and represents the complete and exclusive statement of

the parties with respect to the terms of the settled agreement embodied by this Consent Decree;

any other representations, communications, or agreements by or between parties shall have no

force and effect.

## XV. MODIFICATION

31.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XVI. AUTHORITY OF SIGNATORY

32.     The person signing this Consent Decree on behalf of Framingham Salvage acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that they are authorized to sign and bind Framingham Salvage to the terms of this Consent Decree, and (c) that, to the extent necessary, Framingham Salvage's managers, directors, officers, and shareholders have consented to Framingham Salvage entering this Consent Decree and to its entry as a Final Judgment.

## XVII. TERM AND RETENTION OF JURISDICTION

33.     The term of this Consent Decree shall be from the Effective Date until two (2) years after the Effective Date.  During the Term, the Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

14

## XVIII. FINAL JUDGMENT

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall

constitute a Final Judgment of the Court.


OFFICE OF THE ATTORNEY GENERAL
ANDREA JOY CAMPBELL, ATTORNEY GENERAL

By: _EField_____    Date: 11/20/2023_____
Emily Mitchell Field
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2207
Emily.Field@mass.gov

UNITED SALVAGE CORP. OF AMERICA

By: _David P. Poublitt_____    Date: 11/9/2023_____
David P. Rosenblatt, Esq.
Burns & Levinson LLP
125 High Street
Boston, MA 02110
drosenblatt@burnslev.com


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

**/s/ Angel Kelley, D.J.**_____

United States District Court

Dated: 1/22/2024_____

15